IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR702 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN A. POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| TERRY D. GUTSHALL, | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT'S SENTENCING |
| Defendant. | ) | MEMORANDUM |

The United States of America, by its counsel Justin E. Herdman, United States Attorney, and Danielle K. Angeli, Assistant United States Attorney, respectfully requests that this Court sentence Defendant Terry Gutshall ("Defendant") to a term of imprisonment within the Guidelines range of 151 to 188 months.

**I.     FACTUAL STATEMENT**

In July and September 2018, an undercover agent directly connected to Defendant's IP address and downloaded approximately 84 torrent files depicting child sexual abuse material, including prepubescent minors engaging in sexual intercourse with adult males. (R. 13: Presentence Investigation Report "PSR", ¶¶ 8-11, PageID 69-70). As a result, the agent obtained a federal search warrant for Defendant's home, which was executed on October 30, 2018. (*Id.* ¶ 13, PageID 71). Agents seized 21 compact dics, two 80GB Seagate hard drives, two flash drives, five smartphones, a notebook, a computer tower, and a Hitachi hard drive from Defendant's home. (*Id.*).

Defendant also voluntarily consented to a polygraph examination. During the examination, Defendant admitted that he had been utilizing peer-to-peer software to download child pornography for several years, and he was familiar with how the software works. (*Id.* ¶ 14). He also admitted that he "had a problem with exposing [him]self to women since [he] was approximately 16 years old." (*Id.* ¶ 15). He described that when he was 16 years old, he exposed himself to a neighbor. He also attacked a woman running in the alley behind his house, and tried to pull down her pants. When she yelled for Defendant to stop, he ran away. Since that age, Defendant admitted that he has been exposing himself to women off and on, but never seemed to get caught. He would unzip his pants and pull out his penis. But this behavior escalated once he discovered child sexual abuse material on the Dark Web—he started exposing himself to children. Defendant admitted that he exposed himself between 30 and 100 different times to middle school and high school girls from his patio door as they walk to and from school, as recently as three weeks before the search warrant execution. (*Id.*).

## II. ARGUMENT

### A. The PSR Correctly Calculated Defendant's Guidelines, Including All of the Specific Offense Characteristics.

Defendant's base offense level is 22 under U.S.S.G. § 2G2.2(a)(2). (*Id.* ¶ 22, PageID 74). The Guidelines provide several specific offense characteristics to account for more egregious conduct, several of which apply to Defendant. First, a two-level increase applies under § 2G2.2(b)(2) because Defendant's collection of child pornography includes files of prepubescent minors. (*Id.* ¶ 23). Specifically, the PSR notes that Defendant's child pornography collection includes images and videos of prepubescent children. (*Id.* ¶ 11, PageID 70). Two additional levels are added under § 2G2.2(b)(3)(F) because Defendant knowingly engaged in

2

distribution. (*Id.* ¶ 24).  During the undercover investigation, the agent downloaded approximately 84 child abuse material files from Defendant.  (*Id.* ¶¶ 10-11, PageID 69-70).

Additionally, four levels are added under § 2G2.2(b)(4) because Defendant's collection involves photos and videos of adult males sexually penetrating prepubescent children, which is inherently sadistic.  (*Id.* ¶ 25); *see also United States v. Groenendal*, 557 F.3d 419, 426 (6th Cir. 2009) (holding that "penetration of a prepubescent child by an adult male constitutes inherently sadistic conduct that justifies the application of § 2G2.2(b)(3)"); *United States v. Parker*, 267 F.3d 839, 846–47 (8th Cir. 2001) (applying § 2G2.2(b)(3) enhancement for images depicting minor engaging in forced oral sex and adult male ejaculating and urinating in minor child's face). Defendant's objection to this enhancement is meritless.  Defendant's collection includes prepubescent girls engaging in oral-to-genital *and* genital-to-genital penetration with adult males. Specifically, one of Defendant's child pornography videos depicts several prepubescent girls who engage in both oral-to-genital and genital-to-genital penetration with adult males.  (R. 13: PSR, ¶ 11, PageID 70).  This video alone satisfies the four-level enhancement under *Groenendal*. Indeed, Defendant acknowledges that "penile penetration of a prepubescent child by an adult male . . . would in fact, cause pain."  (R. 15: Sent. Memorandum, PageID 113).  Therefore, the Court should overrule Defendant's objection and apply the four-level enhancement under § 2G2.2(b)(4).

Next, two levels are added under § 2G2.2(b)(6) because Defendant's offenses involve the use of a computer.  (R. 13: PSR, ¶ 26, PageID 75).  Finally, a five-level increase applies under § 2G2.2(b)(7)(D) because the offenses involved 600 or more images.  (*Id.* ¶ 27).  Specifically, Defendant's collection included 6,300 images of child pornography.  (*Id.*).  Thus, Defendant's adjusted offense level is 37.  (*Id.* ¶ 31).  If the Court determines a three-level reduction for

acceptance of responsibility is appropriate, Defendant's total offense level is 34. (*Id.* ¶ 35). Defendant has no criminal history, so he is a criminal history category I. (*Id.* ¶ 39). Thus, Defendant's advisory Guidelines range is 151-188 months. (*Id.* ¶ 54, PageID 77).

>    **B.    A Guidelines Sentence is Sufficient But Not Greater than Necessary to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment.**

Considering the factors set forth in 18 U.S.C. § 3553(a), a Guidelines sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide a just punishment for the offense, and to afford adequate deterrence.

Notably, the nature and circumstances of Defendant's offense are troubling. Defendant received and distributed videos and images that depicted horrific sexual abuse of children, including prepubescent children engaged genital-to-genital penetration with adult males—acts that are "per se sadistic." *Groenendal*, 557 F.3d at 425 (collecting cases). Defendant's collection includes children as young as toddlers; it depicts adults ejaculating on children's faces, collecting a prepubescent girl's urine, and engaging in oral-to-genital penetration with prepubescent children.

Defendant engaged in crimes that inherently involve the sexual abuse of helpless children and the documentation of that horror. Child pornography victims are harmed initially during the production of images, but the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims. Each time their sex abuse videos and images are distributed, received, and possessed, these children are victimized yet again. Given the Internet's extensive reach, their exploitation will never end. Because of people like Defendant—people who receive sexual gratification from viewing these abusive acts—a market for child sex abuse

4

material exists. Defendant participated in that marketplace by distributing these files to others. But the market can only be sustained through the continued rape and molestation of children.

In *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court recognized the serious and continued harm posed by child pornography: "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance[.]" *Id.* at 757. Because the sexual abuse is reduced to a recording, the image or video may haunt the child long after the original violation occurred. *Id.* Victims of child pornography crimes suffer harms that last a lifetime: "[T]he materials produced are a permanent record of the child[']s participation and the harm to the child is exacerbated by their circulation." *Id.* at 759. "[T]he use of children as subjects of pornography materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758. Indeed, "pornography poses an even greater threat to a child victim than does sexual abuse or prostitution." *Id.* at 759 n.10 (internal citation and quotations omitted). Although *Ferber* was decided in 1982, those statements ring true over 30 years later as the seriousness of these offenses has not changed.

Congress' actions in imposing substantial sentences further highlight the seriousness of child pornography offenses. Congress acted, in part, because of testimony given by victims and their families. Their testimony was similar to that which is contained in the victim impact statements submitted for this case. Although the victims' strength of character shines through, profoundly sad themes emerge from reading statements. These victims feel continually victimized and helpless because they cannot remove the record of their childhood sexual abuse from the Internet. One victim explains, "I am still having emotional and psychological problems due to knowing that the images of me being abused as a child are circulated freely on the internet." (R. 13: PSR, ¶ 17, PageID 72). She continues, "I have not found a job that I can do

and feel safe, I have not been able to work because of the panic attacks that I get when working in public or the intrusive questions that always seem to come from co-workers in my small town." She explains, "I know that my life will always be an emotional roller coaster because of the 'public' nature of my private hell." (*Id.*). In another statement, she explains:

> I am hurt every time I hear about another criminal case that involves my images. With each criminal case that I hear about I know that many more copies of my images are spread around the internet; I know that there is a lesser and lesser chance that the horror I feel about people seeing me this way will ever end.

(*Id.*). She also describes, "each [criminal case] means an additional hurt to me. This hurt is over and above the general aching in my heart that is always there. It tells me that someone else is enjoying my pain." (*Id.*). She further explains:

> I live everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Every day, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain.

(*Id.*, PageID 73). But the exploited children are not the only victims—their families suffer as well. One victim's husband describes, "[w]e have been plagued by stalker after stalking calling themselves 'fans' and being oblivious to the damage they are causing a survivor of one of the most traumatic events a human can experience." (*Id.*). Therefore, a substantial sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. 18 U.S.C. § 3553(a)(2).

6

**C.    Similarly, a Guidelines Sentence Will Afford Adequate Deterrence and Protect the Public from Defendant's Future Crimes.**

What is especially troubling here is Defendant's escalation in sexually deviant behavior after viewing child sex abuse material. Defendant admitted that he has been exposing his genitalia to women since he was 16 years old. After viewing child sex abuse material, Defendant began exposing himself to middle school and high school girls who walked past Defendant's home going to and from school. This rebuts Defendant's assertion that he "is otherwise a productive citizen." (R. 15: Sent. Memorandum, PageID 112). Relatedly, an offender's pornography and erotica collection is the single best indicator of what he wants to do. Kenneth V. Lanning, Office of Juvenile Justice and Delinquency Prevention, *Child Molesters: A Behavioral Analysis for Professionals Investigating the Sexual Exploitation of Children,* 107 (5th ed. 2010). But during his polygraph examination, Defendant admitted that he masturbated to the child abuse material and then deleted it from his computer. The images and videos described in the PSR are but a small sample of Defendant's sexual deviance. Defendant has already shown a willingness to act upon, and escalation of, sexually deviant behavior. Therefore, a Guidelines sentence will best protect the public from Defendant's future crimes. 18 U.S.C. § 3553(a)(3).

Further, Defendant's minimization of his guilt as "the result of his mental illness" is unavailing. (R. 15: Sent. Memorandum, PageID 112). There is no evidence of this unspecified mental illness nor a medical diagnosis that Defendant has either a mental or emotion disorder. (R. 13: PSR, ¶ 47, PageID 76-77). In addition, although Defendant asserts that he suffered traumatic life experiences, (*id.*), Defendant explained that "he had a happy childhood and was never subjected to any physical or sexual abuse." (R. 13: PSR, ¶ 43, PageID 76).

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Ferber*, 458

7

U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."); *see also Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) (deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

In *United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007), the Seventh Circuit opined that the greater the customer demand for child pornography, the more that will be produced.  *Id.* at 782.  "Sentences influence behavior[:] the logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced."  *Id.*  Indeed, the Sixth Circuit reversed a district court that failed to see any importance in general deterrence.  *See Bistline I*, 665 F.3d at 767.  During sentencing, the district court explained that it thought that deterrence had little, if anything, to do with the particular case.  *Id.*  The Sixth Circuit found this statement "inexplicable" and in conflict with its prior statement that "[g]eneral deterrence is crucial in the child pornography context."  *Id*. (quoting *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

8

Similarly, others who have an overwhelming desire for young children will not be deterred if Defendant receives a low sentence.  These offenders communicate with each other online and are concerned about law enforcement detection, to the point of encrypting their hard drives and taking other precautions to prevent detection.  Further, the Court is in the position to send a message to individuals like Defendant who share a morbid fascination and sexual gratification in watching the abuse and torture of children.  No general deterrence is gained by a mere slap on the wrist.  These are serious crimes and should be treated as such.  A Guidelines sentence will increase children's safety by serving to deter others like Defendant.  Thus, a Guidelines sentence will provide adequate deterrence for both Defendant and like-minded individuals.  18 U.S.C. § 3553(a)(3).

Additionally, based on Defendant's offense conduct, the United States recommends that this Court order his participation in a sex offender treatment program as part of his sentence.

## III.  CONCLUSION

For the foregoing reasons and for the reasons to be articulated at sentencing, the United States respectfully requests that the Court sentence Defendant within the Guidelines range of 151 to 188 months.

    Respectfully submitted,

    JUSTIN E. HERDMAN
    United States Attorney

By:    /s/ Danielle K. Angeli
    Danielle K. Angeli (MI: P81362)
    Assistant United States Attorney
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3875
    (216) 522-8354 (facsimile)
    Danielle.Angeli@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 24th day of June 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

                      /s/ Danielle K. Angeli
                      Danielle K. Angeli
                      Assistant U.S. Attorney